UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00489

SPINE AND SPORTS CHIROPRACTIC,                                    Plaintiffs
INC. an Ohio corporation, individually and
as the representative of a class of similarly-
situated persons,

v.

ZIRMED, INC. and JOHN DOES 1-10,                                   Defendants

### MEMORANDUM OPINION

This case involves a class action that arises out of Defendant Zirmed's alleged violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff Spine and Sports Chiropractic, Inc. ("S&S"), alleges that on November 8, 2012, it received an advertisement, (Docket No. 1-2), via its facsimile machine for various products and services offered by ZirMed. (See Docket No. 34-3). S&S alleges ZirMed had not received permission to send this advertisement, and the fax ad did not include an opt-out notice meeting the requirements of the TCPA. The TCPA makes it unlawful "to send to a telephone facsimile machine an unsolicited advertisement, unless--" certain requirements are met. 47 U.S.C. 227(b)(1)(C). S&S claims entitlement to the statutory damages provided by the TCPA.

On June 30, 2014, the Court certified a class consisting of the 663 subscribers of the fax numbers to whom ZirMed successfully sent the ZirMed Fax. The Court named S&S as the representative of the class.

Subsequently, the parties engaged in a settlement conference, and S&S submitted an unopposed motion requesting preliminary approval of the Class Settlement Agreement. On May 4, 2015, this Court granted the parties' Motion for Preliminary Approval of the Class Settlement Agreement. (Docket No. 75.) After this Court's Order, CAC Services Group, LLC, the third-party class administrator, administered the class. (Docket No. 78-1 at 1.) CAC's efforts culminated in "332 of the 663 Class

Members (which amounts to 50.1%) . . . either submit[ing] valid claims or be[ing] independently identified as eligible for a share of the Settlement Fund." (Docket No. 78-1 at 2.)

Under the Class Settlement Agreement, Zirmed has agreed to pay the total sum of $380,650 into a settlement fund in consideration for a release of claims by the Class Members for any TCPA violations. (Docket Nos. 75 at 3; 78-1 at 2.) The funds will be allocated as follows. Each class member who is eligible to receive a share of the settlement fund will receive $500. (Docket No. 78-1 at 3.) This is the full amount of statutory damages to which the class members are entitled. (Docket No. 78-1 at 3.) The total sum paid to eligible class members will be $166,000. (Docket No. 78-1 at 3.) Class counsel requests an award of attorney's fees for $126,883.33 which is one third of the settlement fund. (Docket No. 78-1 at 3.) Class counsel also requests an award of expenses incurred in litigating this action of $17,012.19. Lastly, class counsel seeks an award to S&S "for its service as Class Representative" for $10,000. (Docket No. 78-1 at 3-4.) This is known as the Named Plaintiff Award.

When the aforementioned figures are added together, the sum is $319,895.52. (Docket No. 78-1 at 4.) After deducting $319,895.52 from the total sum, there is $60,754.48 remaining in the settlement fund. (Docket No. 78-1 at 4.) According to the settlement agreement, the funds remaining in the settlement fund will be returned to Zirmed. (Docket No. 78-1 at 4.) Zirmed will also receive any funds from uncashed checks to class members. (Docket No. 78-1 at 4.)

**Legal Standard**

Class actions may only be settled after a hearing and with the court's approval. Fed. R. Civ. P. 23(e). In order to approve of class settlement, the district court "must conclude that it is fair, reasonable, and adequate." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing Fed. R. Civ. P. 23(e)(1)(C)). The Sixth Circuit Court of Appeals has established several factors that a court should consider when making this determination. *Id.* These factors include: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class

members; and (7) the public interest." *Id.* (first citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); then citing Williams v. Vukovich, 720 F.2d 909, 922–23 (6th Cir. 1983)). No one of these factors is dispositive. Rather, all are to be weighed and considered in light of the particular demands of the case. *See, e.g.*, *Grenada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). The Sixth Circuit has also recently held that although it is not one of the seven factors, "in evaluating the fairness of a settlement [it has] . . . looked to whether the settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (citing *Williams v. Vukovich*, 720 F.2d 909, 925 n. 11 (6th Cir.1983)). The court has found "that such inequities in treatment make a settlement unfair." *Id.* (noting that it need not address the appropriateness of a large incentive award because it found the exoneration of debts to the class representatives excessive and unfair).

## Discussion

The only disagreement this Court has with the Class Settlement Agreement concerns the amount of the incentive award to the Class Representative S&S.

The Sixth Circuit Court of Appeals has never explicitly approved or disapproved of incentive awards to class representatives. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). However, district courts in the Sixth Circuit, including this Court, have given incentive awards in the past. *See Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003); *see also Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 301 (W.D. Ky. 2014); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *12 (W.D. Ky. Aug. 23, 2010). Courts have granted incentive awards as they "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix*, 322 F.3d at 897. While the Sixth Circuit Court of Appeals has found that "there may be circumstances where incentive awards are appropriate," it has also expressed "a sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Id.* at 897-98; *see also In re Dry Max Pampers Litig.*, 724 F.3d at 722. According to the court, "to the

3

extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *In re Dry Max Pampers Litig.*, 724 F.3d at 722. The court has also reasoned that:

> The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned. *But we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole*; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief.

*Id.* (emphasis added).

As this Court has noted previously, district courts in this Circuit often consider three primary factors in determining whether an incentive award is appropriate:

> 1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the class Representatives in pursuing the litigation.

*Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 301 (W.D. Ky. 2014) (citing *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)).

In a recent Ohio district court opinion concerning a class action in which the defendant violated the "junk fax" provision of the TCPA, the court found that an incentive award of $10,000 for each named plaintiff was excessive. *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *10-12 (S.D. Ohio Feb. 7, 2014). The class members were to each receive $190, and the court reasoned that a $10,000 incentive award to the class representatives would be "disproportionate to the benefit awarded to unnamed Class Members." *Id.* at 11. The court noted that under the TCPA, damages are the actual loss or $500, whichever is greater, and the court may award treble damages if the defendant willfully or knowingly violated the Act. *Id.* at 11 (citing 47 U.S.C. § 227(b)(3)). The court stated that if it were to award treble damages, the class representatives would have received either $1,500 or $6,000

4

corresponding to the number of "junk faxes" each representative received from the defendant. The court stated that there is "precedent for incentive awards in the neighborhood of $1,000 to $5,000 in consumer protection class actions." *Id.* (citing district court cases from California and Ohio). Ultimately, the court awarded each class representative $3,000. *Id.* at 12. The court found that $3,000 "recognizes that absent their willingness to be class representatives . . . the Class Members likely never would have recovered damages from Defendants as their claims, individually, would not have been worth bringing. However, the amount is not so disproportionate as to create a patent divergence of interests between the Class Representatives and the Class Members." *Id.* The court also found that it was an appropriate amount as the named plaintiff had minimal involvement in the litigation of the case. *Id.*

In this case, the eligible class members will each receive $500, the full amount to which they are entitled under the statute. (Docket No. 78-1 at 3.) If the Court were to treble the damages, the Class Representative S&S would receive $1,500 as it only allegedly received one fax from Zirmed on November 8, 2012. (Docket No. 1-2). The disparity in the award to eligible class members of $500 and the incentive award of $10,000 to S&S appears to be excessive and unfair in this case. However, some incentive award would be proper as it is due in part to the efforts of the Class Representative S&S that there is a class settlement agreement before this Court. As class representative, S&S replied to discovery requests and was deposed in this action. Clearly, the actions of S&S resulted in a substantial benefit to class members. S&S did not assume any substantial direct or indirect financial risk. Additionally, the amount of time and effort spent by S&S was not substantial, but it was more than minimal. Therefore, the Court finds an award of $5,000 for the Class Representative S&S to be appropriate.

**IT IS SO ORDERED.**


cc: Counsel